Our next case is number 16-2144, Johnson v. Shulkin. Ms. Bond. May it please the Court. The Veterans Court misinterpreted... What's the status of the rulemaking that was started on this issue last year? It has not... They've received comments on the notice of proposed rulemaking, but they have not yet issued a final rulemaking. The comment period has ended? Yes, I believe the comment... I'm not sure about that actually, Your Honor, but they have already received comments and started considering those comments. The position that's taken in the rulemaking is different from the position that you've taken now, right? In the sense, as I understand it, the rulemaking would preclude any topical application from being systemic. Yes, Your Honor. Or as you say, that could be a systemic action. Well, I'll answer the question about the new proposed regulation first. In the new proposed regulation, instead of simply incorporating the plain meaning of systemic and topical, they provide specialized definitions, and they're essentially now terms of art. So yes, in the new rulemaking, they would be categorically anything that is ointment would not be systemic therapy. In this regulation, we simply are relying on the plain meaning. So... Do you agree under this, the current regulation, you agree that topical under some circumstances could be systemic? We agree that it would be up to a fact finder at the VA. In the mine run of cases, given the regulations contradistinction between systemic and topical, and given the plain meaning of those terms, typically they would not be. And although Mr. Johnson refers to some scientific sources in his brief, which we would note were not before the VA, the board, or the Veterans Court, but to the extent that those sources show that there may sometimes be the potential for systemic side effects in some peripheral applications of topical corticosteroids, we would still point out there's a difference between simply having the potential for unintended side effects versus being systemic therapy, as the regulation requires. But do you agree that topical could sometimes be systemic therapy? We agree that in a different case, a fact finder would be free to make that type of fact finding. And as I am not a medical expert in this area, I can't necessarily say whether that is certainly the case, that even in the peripheral cases that could be true. So if that's the standard, and I understand what you're saying, if that's the standard, do we have to remand for such a factual determination being made here? No, Your Honor, the factual finding has already been made in this case. The board found that Mr. Johnson received topical therapy and not systemic therapy, and even- I don't know that they made that factual determination. As I read the decision, it seems to say that topical can never be systemic. Or at least- The topical treatment doesn't have to be systemic. It's still within the regulation. Your Honor, at pages 93 of the appendix, which is the supplemental statement of the case, the VA regional office found that it said there was no evidence of systemic treatment. And it was considering the most recent remand, the 2013 remand to the medical examiner, who likewise, there are different boxes that can be checked, and they checked only topical corticosteroids. And then again, at page 97, in the finding of fact by the board, the board found there was no qualifying systemic therapy. And given the fact that the board expressly acknowledged that there was constant or near constant application of topical ointments- I'm sorry, what are you pointing at, at A97? The finding of fact, where it says treatment of the veteran's skin disorder has not included systemic therapy. And it goes on to recite the systemic therapy requirements for the 30% rating, but because the board also made a finding of fact that the veteran had received constant or near constant topical ointment, application of topical ointment, that necessarily means the board found that that type of application of topical ointment was not systemic therapy. I guess there's two different ways to read the board's opinion. One is that topical application is not systemic therapy, period. Another way of reading it is there was a lot of topical application here, but we find under these circumstances that that topical application does not amount to systemic therapy. And I think the point, to follow up on Judge Dyke's question, is that we can't be certain whether the board had the nuanced conception of what systemic therapy is through topical application that you're now presenting on appeal. Well, two responses, Your Honor. The best way to read this record as a whole is that the board did make that finding. And to the extent that Mr. Johnson is now trying to introduce the argument that the board's finding of fact was clearly erroneous, first of all, that was never an issue before the Veterans Court. And also, it seems like Mr. Johnson's only theory that topical therapy could ever be systemic would be based on side effects. And at page A18, the medical examiner in 2008 found expressly that Mr. Johnson did not suffer side effects from his use of the corticosteroid ointment. Well, the side effects are irrelevant, right? I mean, it has to be therapy. Well, that's exactly the point. But Mr. Johnson has pointed to simply nothing in the record that would suggest that his application of topical corticosteroid to approximately 0 to 5—well, it depends on the medical examiner. There's been 1 to 3% of his body affected or up to 5% of his body affected. There's nothing in this record to suggest that that could be therapy that is affecting or pertaining to his body as a whole. And this again gets back to the concept of therapy versus side effects. If a patient takes an oral, for example, corticosteroid, the effect is that it's absorbed by the body and its method of therapy, of treatment, is to suppress the entire body's immune system and thereby treat the affected area. Here we have a situation where Mr. Johnson was applying topical corticosteroid ointment to the affected area. And it was intended to and did affect that area. And there's not even any evidence that there were unintended side effects. The problem when you talk about what the evidence is is that that's not what we're supposed to decide. Precisely, Your Honor. And that was my second response to Judge Chen's question, which is that what we have here is a situation where the Veterans Court set aside the board's findings, the board's decision, on a legal theory that the reference to corticosteroids was unambiguous and without restriction. And it is neither of those things. Yeah, but let me try. What the Veterans Court held was that treatment, this cortisone treatment under this regulation, was always systemic therapy or always qualified. And you're asking us to reverse that and to distinguish between topical treatments, which are designed only to be localized, and topical treatments that are designed to be systemic therapy, right? Yes, Your Honor. So why don't we have to, if we were to adopt that position, why don't we have to send it back for the Veterans Court to determine whether there's an issue here as to whether this topical treatment was designed to be a systemic therapy? Because that was never an issue at the Veterans Court, and it's really not an issue on appeal. But the only issue that was raised to the Veterans Court was this theory that the reference to corticosteroids is categorical and unambiguous and automatically includes any and all type of corticosteroids. So it was never an issue what did the board find. It was undisputed at the Veterans Court that the board had found this is topical therapy and not systemic therapy. So it would be the most appropriate ruling of this court would be to simply set aside the Veterans Court's incorrect legal interpretation and to remand for the court to sustain the otherwise unchallenged factual findings by the board. Let me ask you about the adjudication manual, which you cite in the brief. We don't have, I take it a, well, I'm confident we don't have a general counsel opinion on this, right? No, your honor, there's no. That would have been helpful. But sometimes I guess these things are not done as thoroughly as maybe they should be. But what we do have is the adjudication manual. First, the one that I, the copy I have is a section 344J3F, which is what you cite. And that appears to be from 2015. Is that the same text that was in existence all the way back to the time that this case began? Or was that added in the midst of this case? That was added in 2015. So that's brand new. So would that govern this case because it was not in place at the time this case was brought? Well, I take it, your honor, is turning to the hour deference issue about whether this is the VA's. Well, my first question is, as a matter of VA practice, would the VA say that, okay, now that we have the adjudication manual in place, that we will apply the adjudication manual as opposed to whatever we might have thought the rule was before? Well, that might be a complex question in a case where the VA adjudication manual has changed or that it reflects a change in position. In this case, the VA inserted this provision not as a change in position but simply as a clarification of its existing position. Well, but this position seems more consistent with the new rulemaking than it does with the position you are taking now. Would you agree with that? I can see how your honor might read it that way, but it's important to note that it appears at Appendix 250. But it does note that when there's a question or a close question as to whether something is topical or systemic, it asks the adjudicator to send it to a medical, a VA or other medical professional to decide whether it is topical or systemic. And also note that... Okay, so that's the note that is at the end, yes. Yes. And it's also important that this is also referring to systemic and topical. And so, again, the plain meaning of topical under the Dorland's definition is something that's affecting only the area to which it is applied. So if there's a VA adjudicator that's presented with a case of ointment that the contention is this ointment is actually affecting or pertaining to the entire body, it is therapy intended to be absorbed in the bloodstream and circulate through the entire body, then that may very well be a question where the adjudicator would have to send it to a medical professional. But the position, as I understand it, in the proposed new regulation is categorical. Yes. If it's on the skin, it's not systemic. Yes. Which is different from Dorland's and different from the position you're taking now and different from the position that you're saying that the adjudication manual takes, right? That's right. That's right, Your Honor. Yes. I don't see the adjudication manual as being the same as the position that you're taking now, even with that. No. Well, especially, Your Honor, we do read it that way, but to the extent that the court does not, I would still present the fact that, again, in the mine run of cases, we do think that topical means topical and systemic means systemic. I understand your argument based on the language of the regulation, but I think that the question that Judge Bryson was asking, and let me put it to you directly, is there some document to which we should be giving our deference here? The VA's position here is reflected in, for example, our deference can be in legal briefs. It can be in the General Counsel's position. You want us to defer to your brief? Well, the General Counsel's position in the Veterans Court, which is sustaining. No, no, no. You want us to defer to the brief cited in this case? Not just this brief, but the Veterans Court brief, and we do think the adjudication manual does support the VA's position here. So apart from the briefs, you say the adjudication manual. Is there anything else? Those are the primary sources to which we think the court should defer. May I reserve the remainder of my time for rebuttal? Yes.  Thank you. May it please the Court. Addressing the issue of the adjudication manual, the Veterans Court correctly noted that the modification cannot serve to retroactively modify the plain meaning of a regulation. So the 2015 modification to the adjudication manual is not entitled to our deference. Well, nothing can modify the plain meaning of the regulation. If the regulation is plain, then the agency can shout from the highest mountain they can find, and that doesn't change the fact that it's plain. But if it's not plain, then perhaps the adjudication manual is pertinent. Let's assume that it's not plain. In that case as well, Your Honor, it is a retroactive. It is something done after the fact. Well, but that's typically the case when an agency comes in to explain a regulation that it previously thought was clear, but has been challenged as ambiguous, and then the agency comes in and says, well, here's what we meant, and they promulgate some kind of document or regulation or otherwise. That's true, Your Honor, and that happened in this case as well. And here, in doing that, in the Federal Register, in amending this regulation, the VA said it was doing so because it noted that it was possible for topical treatments to have systemic effects. So looking at the language of the regulation before it was amended, as it exists for this case, our position is that language is unambiguous. It requires constant or near constant systemic therapy such as corticosteroids. The use of the word corticosteroids there in the regulation in every rating above 0% is clear and plain. A corticosteroid is a corticosteroid. That sounds as though it's within the rating if the topical application has systemic effects, but that's not what the Veterans Court decided here. Well, here, the Veterans Court properly interpreted the regulation and reversed the board and the board's interpretation, and it did so because it said it took an unnarrowly... It said that this treatment with this cortisone or whatever it is is always covered. Because corticosteroids are identified as systemic therapy here. It's clear and it's plain, and the fact that... What do you mean it's identified as systemic therapy? You mean in the language of the regulation? That's correct, and it's identified that way without limitation on application. You're saying it's a systemic such as corticosteroids. That's the language you're... That's exactly right, and there's no limitation on the application of the corticosteroid. Indeed, it would be improper to add a limitation to the regulation to limit the application of corticosteroid to such as oral or parenteral, as is done in the different regulations. Just so I can drill down a little bit here, because I want to make sure that I understand your position, and I understand your view of the Veterans Courts, or I mean, yeah, the lower courts' decision. Is it your view that the right reading of this is that topical application of a corticosteroid can have systemic therapy effects? Or is it your view that this code says that any time you do topical application of a corticosteroid, you necessarily are engaged in systemic therapy? If you have... Which one is it? Yeah, if you have... Is it the former or is it the latter? Well, it's neither, because the regulation says more than that. The regulation for 60% says there is constant or near constant application of systemic therapy such as corticosteroids that is required. So there are other things that are mandated by the regulation. The application has to be constant or near constant, and that application is required. So this is not a situation where the Veteran can unilaterally decide to put a topical corticosteroid on a small part of their body whenever he feels like it and get a 60% rating. That's just not the fact. Yeah, but if you do the topical application regularly and it's a required therapy, then you're saying it's systemic and it's covered, right? That's absolutely correct. And that's based on the plain language of the regulation, which... Even if it doesn't actually have a systemic effect as understood commonly in medical literature? That's correct. And it's perfectly appropriate... So you're saying the regulation essentially displaces the common understanding of systemic therapy? Not necessarily. What I'm suggesting is that this regulation can be broader, and by including corticosteroids specifically as systemic under the different rating provisions, it can be broader. And it's perfectly appropriate for the VA to enact regulations... So then to, I guess, reword what I said before, you're saying that they necessarily expanded the meaning of systemic therapy when they used it in this particular way in this code? Well, they treated corticosteroids in a particular... Is that right, that that's your position, that they necessarily expanded the meaning of what can entail a systemic therapy? Yes, by identifying specifically corticosteroids and not limiting the method of application. It is appropriate for the VA to be over-inclusive when providing benefits to a veteran. And the reasons here can be simple. It is a more objective standard to apply. It's easier to apply. The use of corticosteroids here are identified without limitation on application, and that's distinguished from the Diagnostic Code 6602. If you would take a look at the 0% rating in the current regulations, it refers to no more than topical therapy required during the 12-month period. Would that, in your view, exclude topical therapy with corticosteroids? Assuming that the other requirements of the regulation are met, yes. It would exclude it. So if you had topical, if you went off and got cortisone or something and you put it occasionally on some place on your foot, that would not be topical? That would be systemic, in your view? The regulations for non-0% require some amount of use of systemic therapy, and they also say that it is required. Right. But what I'm trying to get at is whether you're saying that the word topical cannot apply to the use of corticosteroids. Assuming the other requirements of the regulation are met for non-0% rating, yes. That's correct. We could be going even farther than that, as I understand your argument. You're saying that the term, the way the term is used, that corticosteroids are ipso facto systemic. If, in the case of the veteran here, they are used constantly or near constantly and that use is required, then the answer is yes. And if you look, for example… But that would be true of everything down to 10%, would it not? That's correct. So that doesn't require that it be used constantly? It does not. So your argument really comes down to corticosteroids are systemic therapy, period, as far as I can see. Well, the regulation identifies corticosteroids without limiting their method of application. That's right. So that's what I'm trying to get at is, are you really saying that there's no such thing as the topical therapy with corticosteroids? And I think the answer you're giving me is the answer to that is yes. It is, assuming that it is required use and it is used as often as the other non-zero ratings require. Yes. And if you look at the 0% rating, and the government argues that that would void the 0% rating, and that's not true. Here, if you look at the medical evidence in this case, Mr. Johnson used other topical medications, such as ketoconazole and myconazole. Those are topical medications that he used. And the record on A86 shows how those were considered by the medical examiner. Now let me ask you a question. I think it's on page 7 of the government's brief. There is an excerpt from the – no, it's not page 7. Well, in any event, there's an excerpt from the form that was filled out at the time that Mr. Johnson was treated. Now that form, as I understand it, and correct me if I'm wrong, we only have an excerpt of that form. The full form, at least the VA's form, seems to have a box for topical corticosteroids, other topical medications, both of which were checked in this case. And then another box for systemic corticosteroids. Is that correct? It's not in the appendix, but it's the medical form that's online that the VA uses. That struck me as indicative that the VA does not require or does not regard corticosteroids as being inherently systemic. The form that you reference and the one that's available online was only issued in July of 2016. Now what was the prior – well, actually, I have – And the prior form is in the record. I have December 14 on my copy of that form. It was revised in 2014, but when you go to the website to print that form out, which I did, it was issued in July of 2016. Do you have any idea whether that form was the same before that? It was different. In fact, the older form is in the record. Where's the form in the record? The form is in the record at A85. But that's only a part of the full form. It's the full form, Your Honor. We accepted part of the form in our brief, in the red brief on page 7. Oh, it was your brief. Okay. What page of the appendix is that again? A86. And there at the bottom, item 3 is treatment. I'm sorry, there wasn't anything left out of this form when it was – this is the form when it was completed by the medical officer? This is the form for Mr. Johnson's examination in November 2013. And here, as you'll see, identifies topical corticosteroids and identifies the triamlicone that he was prescribed and also identifies as other topical medications and lists the antifungal medications, which he was taking as well. The form here clearly distinguishes corticosteroids, although topical, from other topical medications. Now, the government also argues that on the next page, on A87, there is a reference and a question whether other systemic or topical medications have been provided. The best reading of that form, topical medications, refers to the topical medications that were specifically identified, the ketoconazole and miconozole, and those topical corticosteroids should be considered, in view of this form, as systemic therapy. With respect to Diagnostic Code 6602, that diagnostic code was identified by the government during the briefing and identified a supplemental authority that would provide a definition of the word systemic. And the Veterans Court considered that at the government's request and found that because Diagnostic Code 6602 identifies systemic and specifically limits it to oral and parenteral, that supported that corticosteroids in the diagnostic code here, 7806, was not so limited. On the one hand, the VA knew how to and did limit corticosteroids in the context of Diagnostic Code 6602. The only other place where it uses the term systemic and did not limit it here. It did not limit the method of application. The revised regulation is also persuasive. The VA has now changed the regulation, which it is free to do, pending notice and comment period, to change the definition of topical and systemic, and it has. And that change... I thought the rulemaking was still ongoing. Well, it certainly proposed it, so it is on its way to doing that. Your Honor. And the VA is free to do that and to adopt different definitions. Now, I understand that Mr. Johnson, we're talking about an issue that obviously covers many more people than just Mr. Johnson. But Mr. Johnson, I take it, is receiving 100% TDIU benefits. Is that right? I don't believe that's the case. It's not? Oh, well, I may have gotten a misapprehension from somewhere, but that was what I had thought I had seen in a footnote somewhere. I don't believe that's the case. If I'm wrong, I apologize for that. The final point I'd like to make is with respect to deference. Obviously, if the regulation is not in place... Here we are, footnote two of the government's brief. The VA has granted Mr. Johnson a total disability rating of 100% based on individual employability and employability, TDIU, as of 2010. So are we only talking about some period between 2010 and when he applied for the benefits? Yes, Mr. Johnson filed the claim in 2007. So we're talking about the period between 2007 and 2010? Presumably. I have no reason to dispute the government's statement with respect to TDIU, but the claim was made in 2007, so it would affect that period as well. With respect to deference, we don't believe it applies here. Particularly, and considering this court's Hudgens case, in that case and here, it cannot be ignored that during the pendency of this case, the regulation has been changed. That change should be taken into account and should not afford the VA deference here. I don't understand that argument. Are you saying that had they not changed the regulation, they would be entitled to, or proposed to change it, they would be entitled to deference, but since they've proposed a change in the regulation, that all the deference that they otherwise would have been entitled to goes away? Well, I think particularly here... I really want an answer than yes or no to that question. That's important to me. Well, this court in Hudgens looked to the fact that the regulation was changed and said, because of that, our deference should not be as applicable. So the answer is yes. It doesn't apply. Deference does not apply if you propose to change the regulation. In light of an adverse decision from the Veterans Court. Well, particularly here, where in making that change, the VA recognized that topical application can have systemic effect. So with that recognition in the proposed regulation... But the government recognizes that topical application can have systemic effects and that if it does, and is designed as a therapy, that you may be covered under the existing regulation. They're not fighting that. Well, the argument that topical can only be topical and systemic must be systemic and the two are mutually exclusive, which is the government's argument... No, it's not. Not in this case. They're saying that that's not a clear line between the two because if topical administration is prescribed in order to achieve a systemic therapy, that it would be covered. With all due respect, Your Honor, that's not how we've understood the government's argument. The government has argued that under Dorland's and the definitions given by Dorland's, topical is only topical and systemic is only systemic, and those things are mutually exclusive. All right. Thank you, Ms. Hines. Ms. Bond? I'll be brief, Your Honor. I'd like to quickly address the form at A86 to 87. The prior form that was online does include... and that's going back to 2014... does include the references to systemic corticosteroids. We don't have a copy online of what the form was in 2013, but just looking to the form at A86, it's clear that the boxes that are not checked as yes are omitted. That's what I wondered. That was my initial understanding. This was not the complete form as it was presented to the medical examiner. Yes, the medical examiner... and that's clear from looking at just A86. The question is, has the veteran been treated with oral or topical, and then the only options listed are the topical options, which are checked, and there are other non-checked options for the systemic versions. But you don't know if there was anything before 2014 that included a reference to systemic corticosteroids. I'm not sure of the exact language of the other checked options, but I'm sure there were other checked options that included oral or other... I'm not sure if it actually said systemic corticosteroids, but there were certainly other options that were not checked here. This is not evidence that topical steroids is being referred to as systemic. The second point is that the reference to without limitation, any term looked at in isolation could be said to be without limitation. The limitation comes from the context of the regulation. It comes from the operative requirement for systemic therapy, the distinction with topical therapy, and the overall structure of the regulation. And because the Veterans Court disregarded that important context, we ask that the court reverse the Veterans Court's decision. Thank you, Ms. Blank. Thank both counsel. The case is submitted.